**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **ANGELA HOFFER, et al.,** | § | |
| **Plaintiffs** | § | |
| | § | |
| **V.** | § | |
| | § | **CIVIL ACTION NO. 6:13-CV-188-WSS** |
| | § | |
| **ERIN B. SHANK, P.C., and** | § | |
| **ERIN B. SHANK, Individually,** | § | |
| **Defendants** | § | |

# DEFENDANTS' MOTION FOR SANCTIONS
# DUE TO SPOLIATION OF EVIDENCE

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Erin B. Shank, P.C., and Erin B. Shank, Individually ("Defendants"), file this Defendants' Motion for Sanctions Due to Spoliation of Evidence, and would respectfully show the Court as follows:

I.

On June 24, 2013, one former employee and two then-current employees of Erin B. Shank, P.C. brought this lawsuit alleging violations of the Fair Labor Standards Act—specifically claiming that they were not paid overtime to which they allege they were entitled. The Plaintiffs are Angela Hoffer, Darrelyn Merrell, and Sydney Marroquin (collectively referred to as "Plaintiffs"). The Defendants are Erin B. Shank, P.C. (the "Firm") and Erin B. Shank, individually (collectively referred to herein as the "Defendants"). Erin B. Shank is a solo bankruptcy lawyer with over thirty years of experience. The Firm has offices in Waco and Killeen, Texas. Darrelyn Merrell and Angela Hoffer worked as paralegals in the Firm's Killeen. The Killeen office is managed by a Senior Paralegal, Lena Hughes, who is not a party to this lawsuit.

## II.

This motion stems from Plaintiff Merrell's inappropriate conduct which involved, among other acts, the deletion of substantially all of the Firm's email on May 24, 2013. Defendants bring this motion pursuant to this Court's inherent power to enter an order granting sanctions against a party for willful spoliation of evidence. Specifically, Defendants seek a stay of all further proceedings in this action by Plaintiff Merrell for her role in deleting substantially all of the emails from the computer system of the Firm on May 24, 2013, precisely one month before this lawsuit was commenced, until such time as Plaintiff Merrell pays the Firm's costs of restoring to the Firm's computer system the deleted email and associated attachments. In the alternative, Defendants move this Court for an adverse jury instruction preventing Plaintiff Merrell and any other Plaintiffs determined at the time of trial to have participated in the deletion of such email from arguing that the information deleted did not contain information adverse to their claims in this lawsuit.

## III.

On June 25, 2013, the Defendants were served with the Plaintiffs' Original Complaint in this lawsuit.  On June 28, 2013, the Defendants received a "Spoliation Notice" letter from David G. Langenfeld, attorney for the Plaintiffs. *See* Ex. 1, Shank Aff. ¶ 4.  A true and correct copy of that letter is attached as Exhibit A to the Affidavit of Erin B. Shank, attached to this motion as Exhibit 1.

The Firm contacted the Firm's local IT service technician, Joel Grimes, and requested that he make an image of the Firm's hard drives to preserve as much of the electronic data, as it existed as close as possible to the date the Defendants learned of the lawsuit. In the course of that process, it became apparent that substantial emails were missing from the Firm's system.  *See* Ex. 1, Shank Aff. ¶ 5.

On August 13, 2013, Grimes and the Defendant Shank contacted Tom Rowe, of OTP Consulting, one of the developers of the Time Matters software program used by the Firm. Rowe has been personally involved in the installation and maintenance of Time Matters at the Firm since the Firm has invested over $20,000.00 in the system for managing the client information, docketing, calendaring, and scheduling of bankruptcy matters, document and email management, and client billing. In addition, Rowe conducted training for the Firm's staff, including Plaintiff Merrell and Plaintiff Hoffer, regarding the use of Time Matters. *See* Ex. 1, Shank Aff. ¶ 5; Ex. 2, Rowe Aff. ¶¶ 6, 10.

Grimes and the Defendant Shank informed Rowe that it appeared that the Firm's email had been deleted in the May 2013 time period. *See* Ex. 1, Shank Aff. ¶ 7; Ex. 2, Rowe Aff. ¶ 10. The Firm retained Rowe to investigate the issue. After opening the Firm's current Time Matters database and examining the Email List, Rowe noted that the email seemed to stop at May 24, 2013. He then looked in the Recycle Bin and did not see any emails that had been deleted prior to May 24, 2013. This looked very much as if someone had deleted all the emails in the Email List on May 24, 2013, and then emptied the Recycle Bin after the deletions. *See* Ex. 2, Rowe Aff. ¶ 10.

Using nightly backups that had been preserved by the Firm, Rowe restored data from ten backups spanning the period from 5/13/2013 to 8/14/2013. Rowe determined that as of May 24, 2013, there were 3,002 emails on the Email List that went back to August 13, 2012. The Recycle bin contained approximately 86 deleted emails. *See* Ex. 2, Rowe Aff. ¶ 11.

Rowe then looked at the Time Matters data as preserved on May 25, 2013. The Email List was empty. Furthermore, the Recycle Bin and all deleted records except Message and BKE-Billing records had been permanently deleted. *See* Ex. 2, Rowe Aff. ¶ 12.

Following Rowe's initial work, the Firm was informed that an Audit Log maintained by Time Matters provided the following information from the Firm's computer system on May 24, 2013:

> 4:01 p.m.: Logout by User DDM
> 4:12 p.m. - 4:16 p.m.: Thousands of emails were deleted by a user logged in as LAT
> 4:21 p.m.: Logout by User LRH
> 4:34 p.m.: Logout by User JLP

*See* Ex. 1, Shank Aff. ¶ 7; Ex. 2, Rowe Aff. ¶ 13.

User DDM is Darrelyn Merrell, a Paralegal in the Firm's Killeen office.  User LRN is Lena Hughes, the Senior Paralegal who manages the Firm's Killeen office. User JLP is Jozie Petty, a Receptionist and paralegal-in-training in the Firm's Waco office. *See* Ex. 1, Shank Aff. ¶ 8.

The user login "LAT" was the reception login. The initials LAT represent a former receptionist who no longer worked at the Firm.  In May 2013, the Firm did not have a receptionist in the Killeen office.  At that time, the staff of the Killeen office utilized the LAT user login to access the computer system from the reception desk. This practice facilitated the staff's access to the network for the purpose of scheduling appointments, recording receipt of payment, etc., when a client came into the office, so that the paralegal interacting with a client at the front reception desk would not have to go back to her desk, log out of the system, and then login to the system using her own User ID at the reception desk while a client waited. *See* Ex. 1, Shank Aff. ¶ 9.

Defendant Shank was out of the country attending a bankruptcy conference on May 24, 2013.  On that date, the only members of the Firm's staff in the Killeen office were Darrelyn Merrell and Lena Hughes.  Jozie Petty was in the Waco office on that date, as is her regular practice. Thus, the only persons authorized to access the Firm's computer system in Killeen, including through the LAT user login at the front reception desk, were Darrelyn Merrell and Lena Hughes. *See* Ex. 1, Shank Aff. ¶ 10.

The Senior Paralegal's office is at the back of the office suite. Defendant Shank, as President of the Firm, conducted an investigation and determined that Senior Paralegal Lena Hughes was scheduled to meet with a client from 3:30 p.m. to 4:30 p.m. on May 24, 2013.  The investigation further confirmed that Hughes was in her office, behind a closed door, meeting with a client during the period in which the Audit Log shows the email were deleted using the LAT reception login. *See* Ex. 1, Shank Aff. ¶ 11.

Documents received by the Firm from the Texas Workforce Commission pertaining to Angela Hoffer's claim for unemployment benefits also demonstrate that Darrelyn Merrell prepared a Fax Transmission Cover Sheet from her computer desktop, dated May 24, 2013, and that it appears to have been faxed to the Texas Workforce Commission from the fax machine in the Firm's Killeen office.  The fax machine in the Killeen office is adjacent to the front reception desk. *See* Ex. 1, Shank Aff. ¶ 12.

There is no legitimate reason for anyone to delete either the Firm's emails or the recycle bin from Time Matters. The deletion of nearly all of the Firm's emails, and associated attachments on May 24, 2013, is a serious act causing significant damage to the Firm, which can only be motivated by a desire to hide information or malicious ill will toward the Firm.  *See* Ex. 1, Shank Aff. ¶ 13; Ex. 2, Rowe Aff. ¶ 14.

The Firm's investigation led to the conclusion that there were only two viable possibilities: on May 24, 2013, Plaintiff Merrell either (1) personally accessed the Firm's computer system using the LAT reception login and deleted the Firm's emails and associated attachments; or (2) allowed an unauthorized person to enter the office and access the Firm's computer system using the LAT reception login, who deleted, or assisted Darrelyn Merrell in deleting, the Firm's emails and associated attachments. *See* Ex. 1, Shank Aff. ¶ 14.

On August 28, 2013, Defendant Shank asked Plaintiff Merrell if she knew whether Angela Hoffer had been in the Firm's Killeen office since Hoffer's employment had been terminated on May 13, 2013. Plaintiff Merrell acknowledged that Plaintiff Hoffer had been in the office. In fact, Plaintiff Merrell stated that "it was a free country" and she could not stop someone from coming into the office. Plaintiff Merrell knew that Plaintiff Hoffer was not allowed in either of the Firm's offices after her employment had been terminated. The morning Plaintiff Hoffer's employment had been terminated, she was so verbally abusive with Defendant Shank (cussing at her and shouting) that not only were all of Plaintiff Hoffer's passwords changed on the Firm's computers, but a local locksmith was called in to change all of the locks on the doors of the Killeen office. When Plaintiff Merrell returned to work after Plaintiff Hoffer's termination, Defendant Shank personally told Plaintiff Merrell that the locks had been changed after Plaintiff Hoffer's termination. Therefore, Plaintiff Merrell knew that Plaintiff Hoffer was no longer allowed in the office. *See* Ex. 1, Shank Aff. ¶ 15.

Defendant Shank then asked Plaintiff Merrell if she remembered what happened on May 24, 2013. Plaintiff Merrell was reminded that Defendant Shank was out of the country attending a bankruptcy conference. Plaintiff Merrell was also informed that it appeared Plaintiff Merrell had faxed information to the Texas Workforce Commission regarding Plaintiff Hoffer's claim for unemployment benefits. Defendant Shank wanted to know whether Plaintiff Hoffer had come to the Firm's Killeen office to meet with Plaintiff Merrell in order to get the documents faxed to the Texas Workforce Commission. Plaintiff Merrell denied that she ever faxed anything to the Texas Workforce Commission regarding Plaintiff Hoffer. *See* Ex. 1, Shank Aff. ¶ 16.

Defendant Shank then told Plaintiff Merrell that at around 4:12 p.m., on May 24, 2013, a substantial amount of the Firm's emails were deleted. Defendant Shank asked Plaintiff Merrell if

she did the deleting; and Plaintiff Merrell stated that she did not. Defendant Shank asked Plaintiff Merrell if she allowed Plaintiff Hoffer or anyone else to access the Firm's computers that day, and Plaintiff Merrell responded that she did "not remember" if she did. Plaintiff Merrell repeatedly stated that **she did not remember** the events of May 24, 2013. *See* Ex. 1, Shank Aff. ¶ 17.

Defendant Shank then advised Plaintiff Merrell that, based on her investigation, Plaintiff Merrell's employment with the Firm was being terminated, effective immediately, for her role in either deleting a substantial amount of the Firm's emails on May 24, 2013, or in allowing someone else to have access to the reception desk in the Killeen office, resulting in the deletion of a substantial amount of the Firm's emails. *See* Ex. 1, Shank Aff. ¶ 18.

At this point it has not been ascertained whether it will be possible to restore all of the deleted information, particularly the attachments to the deleted emails. Some of the deleted emails which have been recovered were associated with attachments (documents) that have not been recovered.  For example three of the deleted emails from Plaintiff Merrell were associated with email attachments that had originally been saved in, but are now missing from, Plaintiff Hoffer's file at the firm concerning her personal bankruptcy case, which had previously been filed by the Firm. None of these email attachments—each with the filename: Texas Work Force.wpd—have been recovered. *See* Ex. 1, Shank Aff. ¶ 19. True and correct copies of those emails (without the still missing attachments) are attached as Exhibit B to the Affidavit of Erin B. Shank, attached to this Motion as Exhibit 1.

Based on Rowe's initial investigation of and conclusions regarding the deletion of the Firm's emails on May 24, 2013, it is his opinion that the actual and estimated expenses associated with his investigation of the deletions and recovery of the email and the still missing attachments

totals approximately $6,325.00 to $8,325.00, as discussed in more detail in the Affidavit of Tom Rowe, attached to this Motion as Exhibit 2. *See* Ex. 2, Rowe Aff. ¶¶ 2, 17, 20-21.

IV.

Allegations of spoliation, including the destruction of evidence in pending or reasonably foreseeable litigation, are addressed in federal courts through the inherent power to regulate the litigation process if the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1408 (5th Cir. 1993). *See also Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 109 (3d Cir. 1999) ("[A] trial court should consider invoking its inherent sanctioning powers only where no sanction established by the Federal Rules or a pertinent statute is 'up to the task' of remedying the damage done by a litigant's malfeasance....").

When inherent power does apply, it is "interpreted narrowly, and its reach is limited by its ultimate source—the court's need to orderly and expeditiously perform its duties." *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir.2002) (footnote omitted) (*citing Chambers*, 501 U.S. at 43, 111 S.Ct. 2123). In *Chambers*, the inherent power was linked to the bad-faith conduct that affected the litigation. *See* 501 U.S. at 49, 111 S.Ct. 2123. If inherent power, rather than a specific rule or statute, provides the source of the sanctioning authority, under *Chambers*, it may be limited to a degree of culpability greater than negligence. *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598 (S.D. Tex. 2010).  In the Fifth Circuit, the general rule is that the severe sanctions of granting default judgment, striking pleadings, or giving adverse inference instructions may not be imposed unless there is evidence of "bad faith." *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005); *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003).

In this case, the evidence compels a finding of bad faith because there can be no legitimate reason for not only deleting multiple folders of the Firm's email, but then permanently deleting the Time Matters recycle bin.  Because Plaintiff Merrell was the only one in the front office with authorized access to the reception desk computer, from which the deletions were made, she either personally deleted the emails or allowed someone access to the computer to delete the emails. Either way, there can be no good faith basis for her actions. The Firm invested over $20,000.00 in the system to manage the large volumes of data and information, including emails and associated attachments that would accumulate over a period of time in an active bankruptcy practice. To go to the effort to delete multiple email folders, and then to attempt to erase any evidence of them by additionally deleting the emails from the recycle bin, is further evidence of bad faith. What we do not yet know is what information the person or persons who deleted the data was seeking to hide. But, aside from the possibility that someone simply acted out of malicious ill will to damage the Firm, the only reasonable inference that can be drawn from the mass deletion of data from the Firm's computer system on May 24, 2013, is that those involved were, indeed, seeking to destroy evidence or hide something.

It is well established that a party seeking the sanction of an adverse inference instruction based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D. N.Y. 2003). The "relevance" and "prejudice" factors of the adverse inference analysis are often broken down into three subparts: "(1) whether the evidence is relevant to the lawsuit; (2) whether the evidence would have supported the

inference sought; and (3) whether the nondestroying party has suffered prejudice from the destruction of the evidence." *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 346 (M.D. La. 2006) (*citing Concord Boat Corp. v. Brunswick Corp.*, No. LR–C–95–781, 1997 WL 33352759, at *7 (E.D. Ark. 1997)). Courts recognize that "[t]he burden placed on the moving party to show that the lost evidence would have been favorable to it ought not be too onerous, lest the spoliator be permitted to profit from its destruction." *Chan v. Triple 8 Palace, Inc.*, No. 03CIV6048(GEL)(JCF), 2005 WL 1925579, at *7 (S.D.N.Y. Aug. 11, 2005).

*Pension Committee* recognized the difficulty and potential for unfairness in requiring an innocent party seeking discovery to show that information lost through spoliation is relevant and prejudicial. *See Rimkus Consulting*, 688 F.Supp.2d at 616. Those concerns are acute when the party seeking discovery cannot replace or obtain extrinsic evidence of the content of deleted information. *Id.* But as in *Rimkus*, there are often sources from which at least some of the allegedly spoliated evidence can be obtained. The Firm has been able to recover at least some of the deleted information by restoring the deleted emails. But the associated documents attached to those emails have not yet been recovered. Nor has it been determined what other documents from the system might have been deleted. As set out in the Affidavit of Tom Rowe, there is a cost associated with the recovery of that data. *See* Ex. 2, Rowe Aff. In addition to the $2,325.00 in consulting fees already incurred in restoring information from the backups, consulting with the Firm, reviewing the Audit Log, investigating deleted email attachments, and considering options for restoring deleted emails, Rowe estimates that a reasonable cost to create a "Snapshot" of the email and documents deleted on May 23, 2013 would be between $2000.00 and $4000.00. Ex. 2, Rowe Aff. ¶ 20. In addition, the approximate cost to restore the deleted data and merge it back into the Firm's system is $2000.00. Ex. 2, Rowe Aff. ¶ 21.

In this case it is apparent that Plaintiff Merrell was drafting, faxing, and emailing documents related to Plaintiff Hoffer's claim for unemployment benefits with the Texas Workforce Commission.  Such evidence, taken as a whole, would allow a reasonable fact finder to conclude that the missing evidence would have helped the Defendants support its claims or defenses either in the administrative proceeding or in this employment case.  *See Rimkus*, 688 F.Supp.2d at 616.  Why else would it have been deleted? As in *Rimkus*, the evidence in this case provides a sufficient showing of both relevance and prejudice to make an adverse inference instruction appropriate.

Because the Court has inherit power to sanction the willful conduct of the parties, the Defendants request that Plaintiff Merrell be required to pay the costs of restoring the deleted data, as estimated by Tom Rowe.  *See* Ex. 2, Rowe Aff.

## V.

## Prayer

WHEREFORE, Defendants Erin B. Shank, P.C. and Erin B. Shank move this Court for an order staying all further proceedings in this action by Plaintiff Darrelyn Merrell for her role in deleting substantially all of the Firm's emails on May 24, 2013, until such time as Plaintiff Merrell pays the Firm's costs of restoring the deleted email and associated attachments to the Firm's computer system. In the alternative, the Defendants move this Court for an adverse jury instruction preventing Plaintiff Merrell and any other Plaintiffs determined at the time of trial to have participated in the deletion of such email from arguing that the information deleted did not contain information adverse to their claims in this lawsuit.  Defendants further pray for such other and further relief, at law or in equity, to which the Defendants may show themselves justly entitled.

Respectfully submitted,


By:  /s/ C. Alfred Mackenzie
    **C. Alfred Mackenzie**
    SBOT No. 12761550

C. Alfred Mackenzie, Attorney at Law
P.O. Box 2003
Waco, Texas 76703
(254) 848-9800
(254) 848-9974  (FAX)
AMackenzie@Texas-Appeals.com


**Vance Dunnam**
SBOT No. 06257000
**DUNNAM & DUNNAM**
4125 West Waco Drive
Waco, Texas 76710
(254) 753-6437
(254) 753-7434 (FAX)


**Danny C. Wash**
SBOT No. 20896000
**WASH & THOMAS**
Attorneys at Law
6613 Sanger Ave.
Waco, Texas 76710
 (254) 776-3611
 (254) 776-9217 (Fax)
danwash@washthomas.com


**Attorneys for Erin B. Shank, P.C.**
**and Erin B. Shank**

## CERTIFICATE OF CONFERENCE

On August 29, 2013, the undersigned counsel advised the Plaintiffs,' attorney, David Langenfeld, of the need to confer regarding a motion for sanctions based upon spoliation of evidence. During a telephone conference on August 30, 2013, the undersigned counsel and Langenfeld had a preliminary conversation, discussing at some length the general facts that form the basis of this motion. Subsequently, on September 12, 2013, counsel exchanged correspondence regarding the specific relief requested herein. A draft of the motion, as well as the executed affidavits attached hereto, was subsequently shared with Langenfeld in advance of filing. On September 13, 2013, during a telephone conference, Langenfeld advised the undersigned counsel that the Plaintiffs are opposed to the relief requested in Defendants' Motion for Sanctions Due to Spoliation of Evidence.

/s/ C. Alfred Mackenzie
C. Alfred Mackenzie

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of September 2013, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to the following:

David Langenfeld             Email: David@dunhamlaw.com
Dunham & Jones, P.C.
1800 Guadalupe Street
Austin, Texas 78701

*Attorney for the Plaintiff*

/s/ C. Alfred Mackenzie
C. Alfred Mackenzie

Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **ANGELA HOFFER, et al.,** § | |
| **Plaintiffs** § | |
| § | |
| **V.** § | |
| § | **CIVIL ACTION NO. 6:13-CV-188-WSS** |
| § | |
| **ERIN B. SHANK, P.C., and** § | |
| **ERIN B. SHANK, Individually,** § | |
| **Defendants** § | |

### Affidavit of Erin Shank

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF McLENNAN | § |

BEFORE ME, the undersigned authority, on this date personally appeared the undersigned affiant, who swore on oath that the following facts are true and correct:

1. My name is Erin B. Shank.  I am over the age of 21 years, of sound mind, capable of making this affidavit, and fully competent to testify to the matters stated herein.  I have personal knowledge of each of the matters stated herein.

2. I have been named as an individual Defendant in the above-referenced lawsuit.  I am also the President of Erin B. Shank, P.C. ("Firm"), which has also been named as a Defendant.

3. On May 13, 2013, I terminated the employment of Angela M. Hoffer, one of the Plaintiffs in this lawsuit, for repeatedly failing to handle Firm receipts of money received from clients in accordance with Firm policy and my instructions.

4. On June 25, 2013, I was served with the Plaintiffs' Original Complaint in this lawsuit.  On June 28, 2013, I received a "Spoliation Notice" letter from David G. Langenfeld, attorney for the Plaintiffs. A true and correct copy of that letter is attached to this Affidavit as Exhibit A.

5. I contacted the Firm's local IT service technician, Joel Grimes, and requested that he make an image of the Firm's hard drives to preserve as much of the electronic data, as it existed as close as possible to the date I learned of the lawsuit—June 25, 2013. In the course of that

process, it became apparent that a substantial number of emails were missing from the Firm's system.

6.  On August 13, 2013, Mr. Grimes and I contacted Tom Rowe, of OTP Consulting, one of the developers of the Time Matters software program used by the Firm.  Mr. Rowe has been personally involved in the installation and maintenance of Time Matters at the Firm since the Firm has invested over $20,000.00 in the system for managing the client information, docketing, calendaring, and scheduling of bankruptcy matters, document and email management, and client billing. In addition, Mr. Rowe conducted training for the Firm's staff, including Darrelyn Merrell and Angela Hoffer, two of the Plaintiffs in this lawsuit, regarding the use of Time Matters.

7.  Mr. Grimes and I informed Mr. Rowe that it appeared that the Dee Merrell and Angela Hoffer's email folders had been deleted in the May 2013, time period.  I asked him to investigate the issue. Following Mr. Rowe's initial work, I was informed that an Audit Log maintained by Time Matters provided the following information from the Firm's computer system on May 24, 2013:

    4:01 p.m.: Logout by User DDM
    4:12 p.m. - 4:16 p.m.: Thousands of emails were deleted by a user logged in as LAT
    4:21 p.m.: Logout by User LRH
    4:34 p.m.: Logout by User JLP

8.  User DDM is Darrelyn Merrell, a Paralegal in the Firm's Killeen office.  User LRN is Lena Hughes, a Senior Paralegal who manages the Firm's Killeen office. User JLP is Jozie Petty, a Receptionist and paralegal-in-training in the Firm's Waco office.

9.  The user login "LAT" was the reception login. The initials LAT represent a former receptionist who no longer worked at the Firm.  In May 2013, the Firm did not have a receptionist in the Killeen office. At that time, the staff of the Killeen office utilized the LAT user login to access the computer system from the reception desk. This practice facilitated the staff's access to the network for the purpose of scheduling appointments, recording receipt of payment, etc., when a client came into the office, so that the paralegal interacting with a client at the front reception desk would not have to go back to her desk, log out of the system, and then login to the system using her own User ID at the reception desk while a client waited.

10. Although I was out of the country attending a bankruptcy conference on May 24, 2013, I know from Firm scheduling and records that the only members of the Firm's staff in the Killeen office on May 24, 2013, were Darrelyn Merrell and Lena Hughes.  Jozie Petty was in the Waco office on that date, as is her regular practice. Thus, the only persons authorized to access the Firm's computer system, including through the LAT user login at the front reception desk in Killeen, were Darrelyn Merrell and Lena Hughes.

11. The Senior Paralegal's office is at the back of the office suite. As President of the Firm, I conducted an investigation and determined that Senior Paralegal Lena Hughes was scheduled to meet with a client from 3:30 p.m. to 4:30 p.m. on May 24, 2013.  Based

upon my conversations with Ms. Hughes and the client, I have confirmed that Ms. Hughes was in her office, behind a closed door, meeting with a client during the period in which the Audit Log shows the email were deleted using the LAT reception login.

12. I also know from documents I received from the Texas Workforce Commission pertaining to Angela Hoffer's claim for unemployment benefits that Darrelyn Merrell prepared a Fax Transmission Cover Sheet from her computer desktop, dated May 24, 2013, and that it appears to have been faxed to the Texas Workforce Commission from the fax machine in the Firm's Killeen office. The fax machine in the Killeen office is only a few feet away from the front reception desk.

13. There is no legitimate reason for anyone to delete either the Firm's emails or the recycle bin from Time Matters. I consider the deletion of nearly all of the Firm's emails, and associated attachments on May 24, 2013, to be a serious act causing significant damage to the Firm, which can only be motivated by a desire to hide information or malicious ill will toward the Firm.

14. My investigation led to the conclusion that there were only two viable possibilities: on May 24, 2013, Darrelyn Merrell either (1) personally accessed the Firm's computer system using the LAT reception login and deleted the Firm's emails and associated attachments; or (2) allowed an unauthorized person to enter the office and access the Firm's computer system using the LAT reception login, who deleted, or assisted Darrelyn Merrell in deleting, the Firm's emails and associated attachments.

15. On August 28, 2013, I asked Ms. Merrell if she knew whether Angela Hoffer had been in the Firm's Killeen office since I had terminated Hoffer's employment.  Ms. Merrell stated that she did know that Ms. Hoffer had been in the office.  In fact, she stated that "it was a free country" and she could not stop someone from coming into the office. Ms. Merrell knew that Ms. Hoffer was not allowed in either of the Firm's offices after her employment had been terminated.  The morning I terminated Ms. Hoffer, she was so verbally abusive with me (cussing at me and shouting at me) that I not only changed all of her passwords on the Firm's computers, I also called a local locksmith and changed all of the locks on the doors of the Killeen office. When Ms. Merrell returned to work after Ms. Hoffer's termination, I personally told Ms. Merrell that I had the locks changed after Ms. Hoffer's termination. Therefore, Ms. Merrell knew that Ms. Hoffer was no longer allowed in the office.

16. I then asked Ms. Merrell if she remembered what happened on May 24, 2013. I reminded her that I was out of the country attending a bankruptcy conference, and that it appeared Ms. Merrell had faxed information to the Texas Workforce Commission regarding Ms. Hoffer's claim for unemployment benefits. I wanted to know whether Ms. Hoffer had come to the Firm's Killeen office to meet with Ms. Merrell in order to get the documents facts to the Texas Workforce Commission.  Ms. Merrell denied that she ever faxed anything to the Texas Workforce Commission regarding Ms. Hoffer.

17. I then told Ms. Merrell that at around 4:12 p.m., on May 24, 2013, a substantial amount of the Firm's emails were deleted. I asked Ms. Merrell if she did the deleting, and Ms. Merrell stated that she did not. I asked Ms. Merrell if she allowed Ms. Hoffer or anyone else to access the Firm's computers that day, and Ms. Merrell responded that she did "not remember" if she did. Ms. Merrell repeatedly stated that she did not remember the events of May 24, 2013.

18. I then advised Darrelyn Merrell that, based on my investigation, her employment with the Firm was being terminated, effective immediately, for her role in either deleting a substantial amount of the Firm's emails on May 24, 2013, or in allowing someone else to have access to the reception desk in the Killeen office, resulting in the deletion of a substantial amount of the Firm's emails.

19. At this point I do not yet know whether it will be possible to restore all of the deleted information, particularly the attachments to the deleted emails. My review of some of the deleted email has revealed, for example, that three of the deleted emails from Darrelyn Merrell were associated with email attachments that had been originally saved in, but are now missing from, Angela Hoffer's file at the firm concerning her personal bankruptcy case which had been previously filed by my law firm. None of these emails have been recovered. Each with the filename: Texas Work Force.wpd. True and correct copies of those emails are attached as Exhibit B.


_____
Erin B. Shank


SWORN TO AND SUBSCRIBED BEFORE ME ON THIS 10th day of September 2013.


DAWN GUSTIN
MY COMMISSION EXPIRES
April 18, 2016

_____
Signature of Notary Public

Official Seal


My commission expires   April 18   , 2016.

Exhibit "A"

# DUNHAM & JONES

A PROFESSIONAL CORPORATION
1800 GUADALUPE
AUSTIN, TEXAS 78701
TELEPHONE: (512) 777-7777
FAX: (512) 340-4051

DAVID G. LANGENFELD
ATTORNEY AT LAW
david@dunhamlaw.com

June 27, 2013

**CM/RRR**
**#91 7199 9991 7030 0904 4982**
Erin B. Shank
Erin B. Shank, P.C.
1902 Austin Avenue
Waco, Texas 76701

>       *Re:*     *Angela Hoffer, et al. v. Erin B. Shank, P.C., et al.; CA 6:13-cv-188,*
>                 *United States District Court, Western District of Texas, Waco Division*

Dear Ms. Shank:

By this letter, you are hereby given notice not to destroy, conceal or alter any paper or electronic files and other data generated by and/or stored on your computers and storage media (e.g., hard disks, floppy disks, backup tapes, Zip cartridges, CDs, DVDs, etc.), or any other electronic data, such as voice mail. It is my position that your failure to comply with this notice may result in sanctions being imposed by the Court for spoliation of evidence or potential evidence.

Through discovery we expect to obtain from you a number of documents and things, including files stored on your computers and your computer storage media. As part of our initial discovery efforts, you will soon receive interrogatories and requests for documents and things. Additionally, you will be required to provide disclosures which we will expect to describe relevant electronic and documentary evidence regarding my clients' job duties, hours worked, and wages paid.

In order to avoid spoliation, we will expect you to provide the data requested on the original media, or on exact copies of that media (sometimes referred to as image, evidentiary, or mirror copies), and be able to prove that the original matches the copy in every respect. Do not reuse any media to provide this data.

Additionally, in order to avoid spoliation you may have to suspend certain normal computer maintenance procedures, including but not limited to such procedures as defragmenting hard drives, deleting internet cookies, deleting browser history and favorites, and running any "disk clean-up" processes. Although we may bring a motion for an order

Erin B. Shank
June 27, 2013
Page 2

_____

preserving documents and things from destruction or alteration, your obligation to preserve documents and things for discovery in this case arises in law and equity independently from any order on such motion.

Electronic documents and the storage media on which they reside contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists, we will seek all documents in their electronic form along with information about those documents contained on the media.

We also will seek paper printouts of only those documents that contain unique information after they were printed out (such as paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting and redactions) along with any paper documents for which no corresponding electronic files exist.

Our discovery requests will ask for certain data on the hard disks, floppy disks and backup media used in your computers, some of which data are not readily available to an ordinary computer user, such as "deleted" files and "file fragments." As you may know, although a user may "erase" or "delete" a file, all that is really erased is a reference to that file in a table on the hard disk; unless overwritten with new data, a "deleted" file can be as intact on the disk as any "active" file you would see in a directory listing. In this regard, courts have made it clear that all information available on electronic storage media is discoverable, whether readily readable ("active") or "deleted" but recoverable. See, e.g., Easley, McCaleb & Assocs., Inc. v. Perry, No. E-2663 (Ga. Super. Ct. July 13, 1994; "deleted" files on a party's computer hard drive held to be discoverable, and plaintiffs expert was allowed to retrieve all recoverable files); Santiago v. Miles, 121 F.R.D. 636, 640 (W.D.N. Y. 1988; a request for "raw information in computer banks" was proper and obtainable under the discovery rules); Gates Rubber Co v. Bando Chemical Indus., Ltd., 167 F.R.D. 90, 112 (D. Colo. 1996; mirror-image copy of everything on a hard drive "the method which would yield the most complete and accurate results," chastising a party's expert for failing to do so); and Northwest Airlines, Inc. v. Teamsters Local 2000, et al., 163 L.R.R.M. (BNA) 2460, (USDC Minn. 1999); court ordered image-copying by Northwest's expert of home computer hard drives of employees suspected of orchestrating an illegal "sick-out" on the Internet).

Accordingly, electronic data and storage media that may be subject to our discovery requests and that you are obligated to maintain and not alter or destroy, include but are not limited to the following:

Introduction: description of files and file types sought

All digital or analog electronic files, including "deleted" files and file fragments, stored in machine-readable format on magnetic, optical or other storage media, including the hard drives or floppy disks used by your computers and their backup media (e.g., other hard

Erin B. Shank
June 27, 2013
Page 3

drives, backup tapes, floppies, Jaz or Zip cartridges, CD-ROMs, DVDs) or otherwise, whether such files have been reduced to paper printouts or not. More specifically, please preserve all e-mails, both sent and received, whether internally or externally; all word-processed files, including drafts and revisions; all spreadsheets, including drafts and revisions; all databases; all CAD (computer-aided design) files, including drafts and revisions; all presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint); all graphs, charts and other data produced by project management software (such as Microsoft Project); all data generated by calendaring, task management and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes); all data created with the use of personal data assistants (PDAs), such as PahuPilot, HP Jomada, Cassiopeia or other Windows CE-based or Pocket PC devices; all data created with the use of document management software; all data created with the use of paper and electronic mail logging and routing software; all Internet and Web-browser-generated history files, caches and "cookie" files generated at the workstation of each employee and/or agent in your client's employ and on any and all backup storage media; and any and all other files generated by users through the use of computers and/or telecommunications, including but not limited to voice mail.

Further, please preserve any log or logs of network use by employees or otherwise, whether kept in paper or electronic form, and to preserve all copies of your backup tapes and the software necessary to reconstruct the data on those tapes, so that there can be made a complete, bit-by-bit "mirror" evidentiary image copy of the storage media of each and every personal computer (and/or workstation) and network server in your control and custody, as well as image copies of all hard drives retained by you and no longer in service, but in use at any time from to the present.

Please also preserve and do not destroy all passwords, decryption procedures (including, if necessary, the software to decrypt the files); network access codes, names, manuals, tutorials, written instructions, decompression or reconstruction software, and any and all other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

1. Business Records: All documents and information about documents containing backup and/or archive policy and/or procedure, document retention policy, names of backup and/or archive software, names and addresses of any offsite storage provider.

a. All e-mail and information about e-mail (including message contents, header information and logs of e-mail system usage) sent or received by plaintiffs.

b. All other e-mail and information about e-mail (including message contents, header information and logs of e-mail system usage) containing information about or related to plaintiffs and their job duties, hours worked, and amounts paid.

Erin B. Shank
June 27, 2013
Page 4

c. All databases (including all records and fields and structural information in such databases), containing any reference to and/or information about or related to plaintiffs and their job duties, hours worked, and amounts paid.

d. All logs of activity (both in paper and electronic formats) on computer systems and networks that have or may have been used to process or store electronic data containing information about or related to plaintiffs and their job duties, hours worked, and amounts paid.

e. All word processing files, including prior drafts, "deleted" files and file fragments, containing information about or related to plaintiffs and their job duties, hours worked, and amounts paid.

f. With regard to electronic data created by application programs which process financial, accounting and billing information, all electronic data files, including prior drafts, "deleted" files and file fragments, containing information about or related to plaintiffs and their job duties, hours worked, and amounts paid.

g. All files, including prior drafts, "deleted" files and file fragments, containing information from electronic calendars and scheduling programs regarding or related to plaintiffs and their job duties, hours worked, and amounts paid.

h. All electronic data files, including prior drafts, "deleted" files and file fragments about or related to plaintiffs and their job duties, hours worked, and amounts paid.

2. Online Data Storage on Mainframes and Minicomputers: With regard to online storage and/or direct access storage devices attached to your mainframe computers and/or minicomputers: please do not modify or delete any electronic data files, "deleted" files and file fragments existing at the time of this letter's delivery, which meet the definitions set forth in this letter, unless a true and correct copy of each such electronic data file has been made and steps have been taken to assure that such a copy will be preserved and accessible for purposes of this litigation.

3. Offline Data Storage, Backups and Archives, Floppy Diskettes, Tapes and Other Removable Electronic Media: With regard to all electronic media used for offline storage, including magnetic tapes and cartridges and other media that, at the time of this letter's delivery, contained any electronic data meeting the criteria listed in paragraph 1 above:

Please stop any activity that may result In the loss of such electronic data, including rotation, destruction, overwriting and/or erasure of such media in whole or in part. This request is intended to cover all removable electronic media used for data storage in connection with their computer systems, including magnetic tapes and cartridges, magneto-optical disks, floppy diskettes and all other media, whether used with personal

Erin B. Shank
June 27, 2013
Page 5

_____

computers, minicomputers or mainframes or other computers, and whether containing backup and/or archive data sets and other electronic data, for all of your computer systems.

4. Replacement of Data Storage Devices: Please do not dispose of any electronic data storage devices and/or media that may be replaced due to failure and/or upgrade and/or other reasons that may contain electronic data meeting the criteria listed in paragraph 1 above.

5. Fixed Drives on Stand-Alone Personal Computers and Network Workstations: With regard to electronic data meeting the criteria listed in paragraph 1 above, which existed on fixed drives attached to stand-alone microcomputers and/or network workstations at the time of this letter's delivery: Please do not alter or erase such electronic data, and do not perform other procedures (such as data compression and disk de-fragmentation or optimization routines) that may impact such data, unless a true and correct copy has been made of such active files and of completely restored versions of such deleted electronic files and file fragments, copies have been made of all directory listings (including hidden files) for all directories and subdirectories containing such files, and arrangements have been made to preserve copies during the pendency of this litigation.

6. Programs and Utilities: Please preserve copies of all application programs and utilities, which may be used to process electronic data covered by this letter.

7. Log of System Modifications: Please maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data meeting the criteria listed in paragraph 1 above, regardless of whether such modifications were made by employees, contractors, vendors and/or any other third parties.

8. Personal Computers Used by Your Employees and/or their Secretaries and Assistants:

Please take the following steps to safeguard all personal computers used by your employees and/or their secretaries and assistants.

a. As to fixed drives attached to such computers: (i) a true and correct copy should be made of all electronic data on such fixed drives relating to this matter, including all active files and completely restored versions of all deleted electronic files and file fragments; (ii) full directory listings (including hidden files) for all directories and subdirectories (including hidden directories) on such fixed drives should be written; and (iii) such copies and listings are to be preserved until this matter reaches its final resolution.

b. All floppy diskettes, magnetic tapes and cartridges, and other media used in connection with such computers prior to the date of delivery of this letter containing any electronic

Erin B. Shank
June 27, 2013
Page 6

_____

data relating to this matter are to be collected and put into storage for the duration of this
lawsuit.

9. Evidence Created Subsequent to This Letter: With regard to electronic data created
subsequent to the date of delivery of this letter, relevant evidence should not be destroyed
and please take whatever steps are appropriate to avoid destruction of evidence.

In order to assure that your obligation to preserve documents and things will be met,
please forward a copy of this letter to all persons and entities with custodial responsibility
for the items referred to in this letter.

Finally, please appreciate that each named plaintiff in this matter **is represented by
counsel**.  Therefore, please do not communicate directly, or indirectly, with any plaintiff
with regard to the subject matter of this litigation.  This includes, but is not limited to,
discussions involving settlement.  In this regard, settlement of these claims will require
approval by the Federal Court and will also require payment of all attorney's fees and
costs.

Sincerely,

David G. Langenfeld

Exhibit "B"

**From:** DDM
**To:** dmerrell123@embarqmail.com
**Sent:** 5/23/2013   8:09AM
**Subject:** Texas Work Force

Kindest Regards,

Dee Merrell
Paralegal
Erin B. Shank, P.C.
254-690-4110
Fax - 254-690-7115
Killeen, TX 76541

Notice of Confidentiality
This e-mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition, this message and attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message from your system.

8/16/2013

**From:**   DDM
**To:**       dmerrell123@embarqmail.com
**Sent:**    5/23/2013  10:08AM
**Subject:** Texas Work Force

Kindest Regards,

Dee Merrell
Paralegal
Erin B. Shank, P.C.
254-690-4110
Fax - 254-690-7115
Killeen, TX 76541

Notice of Confidentiality
This e-mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition, this message and attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message from your system.

8/16/2013

**From:** DDM
**To:** dmerrell123@embarqmail.com
**Sent:** 5/24/2013   7:16AM
**Subject:** Texas Workforce

Kindest Regards,

Dee Merrell
Paralegal
Erin B. Shank, P.C.
254-690-4110
Fax - 254-690-7115
Killeen, TX 76541

Notice of Confidentiality
This e-mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition, this message and attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message from your system.

Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| ANGELA HOFFER, et al., | § | |
| Plaintiffs | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. 6:13-CV-188-WSS |
| | § | |
| ERIN B. SHANK, P.C., and | § | |
| ERIN B. SHANK, Individually, | § | |
| Defendants | § | |

### Affidavit of Thomas L. Rowe

| | |
|---|---|
| STATE OF NORTH CAROLINA | § |
| | § |
| COUNTY OF WAKE | § |

BEFORE ME, the undersigned authority, on this date personally appeared the undersigned affiant, who swore on oath that the following facts are true and correct:

1. My name is Thomas L. Rowe.  I am over the age of 21 years, of sound mind, capable of making this affidavit, and fully competent to testify to the matters stated herein.  I have personal knowledge of each of the matters stated herein.

2. This affidavit is provided at the request of Erin B. Shank, P.C. ("Firm") to outline my investigation of and conclusions regarding the deletion of the Firm's emails on May 24, 2013, as well as my opinions regarding the actual and estimated expenses associated with my investigation of the deletions and recovery of the email, totaling approximately $6,325.00 to $8,325.00, as discussed in more detail below.

3. I am a Managing Director of OTB Consulting, a legal technology consulting company based in Cary, North Carolina.

4. I earned a dual degree in Computer Science and Business Administration from Vanderbilt University in 1981. I received a Juris Doctorate from the University of Georgia School of Law in 1986.

5. In 2001, I became the Vice President of DATA.TXT Corporation, the developers of Time Matters Software, the leading legal practice management software system. I was the liaison

between DATA.TXT and LexisNexis Corporation, the company that subsequently acquired DATA.TXT. I was the director of the Certified Independent Consultant (CIC) Program, and as the "Trainer of the Trainers" provided the training for all Time Matters' CICs from 2000 to 2009.  I also developed and delivered all Time Matters Certified Training Classes from 2000 to 2009, and was an integral member of the Time Matters versions 4.0, 5.0, 6.0, 7.0 and 8.0 Development Teams.

6.  The Firm is a client of OTB Consulting, and I have I have been personally involved in the installation and maintenance of Time Matters software at the Firm, as well as the training of its staff.

7.  Email in Time Matters software is stored in two places: either a user's Inbox, which is specific to an individual's user login, or on the Email List which contains all the Firm's email once it has been moved from an Inbox (typically when it is related to a Case and/or Contact with which it is associated).

8.  Records, such as email, that are deleted in Time Matters are moved to temporary tables in the SQL database where Time Matters data is stored. Within Time Matters these records are deemed to be moved to a "Recycle Bin."  Records moved to the Recycle Bin can be restored, or the Recycle Bin can be "emptied" at which time they are permanently deleted from the Time Matters SQL database.

9.  All logins, logouts, as well as most changes to records are logged in what is called an Audit Log. Most fields, but not all, are marked to be audited in the Audit Log.

10.  I was contacted on August 13, 2013, by Erin Shank and her IT representative, Joel Gaines. I was told in the conversation that some email might have been deleted in Time Matters. I opened the current Time Matters database and looked at the Email List. I noted that the email seemed to stop at May 24, 2013. I then looked in the Recycle Bin and did not see any emails that had been deleted prior to May 24, 2013. To me, this looked very much as if someone had deleted all the emails in the Email List on May 24, 2013, and then emptied the Recycle Bin after the deletions.

11.  Using nightly backups that had been preserved by the Firm, I restored ten backups in order to see if I could piece together what had happened. I restored the data from 5/13/2013, 5/14/2013, 5/18/2013, 5/24/2013, 5/25/2013, 5/27/2013, 5/30/2013, 6/5/2013, 6/25/2013, and 8/14/2013, to see if I could determine what had been deleted, how, and by whom. I found that as of May 24, 2013, there were 3,002 emails on the Email List that went back to August 13, 2012. The Recycle bin contained approximately 86 deleted emails.

12.  I then looked at the Time Matters data as preserved on May 25, 2013. The Email List was empty. I then looked in the Recycle Bin and all deleted records except Message and BKE-Billing records had been permanently deleted.

13. Still using the backup from May 25, 2013, I reviewed the most recent entries in the Audit Log. I was able to determine the following timeline for May 24, 2013:

4:01 p.m.: Logout by User DDM
4:12 p.m. - 4:16 p.m.: Thousands of emails were deleted by a user logged in as LAT
4:21 p.m.: Logout by User LRH
4:34 p.m.: Logout by User JLP

14. Because the emptying of the Recycle Bin is a function that is not audited, I could not determine which Time Matters user emptied the Recycle Bin. However, it is clear that it was emptied after the deletion of the email records, and before the next backup. There should be no legitimate reason for a non-administrative staff member to delete the Recycle Bin in Time Matters.

15. I was asked to consider what steps could be taken to restore the Firm's email and associated attachments. Although we have been able to access, from backups, the emails as they existed on May 24, 2013, they haven't been added back into the Firm's current database.

16. My usual and customary fee for consulting on matters such as this is $250.00 per hour.

17. I spent three hours on August 13, 2013, to obtain a 5/24/2013 snapshot from the restored backups, at a cost of $750.00. As of August 26, 2013, I have spent an additional 6.3 hours consulting with the Firm, reviewing the Audit Log, investigating deleted email attachments, and considering options for restoring deleted emails, at a total cost of $1575.00. To date, I have billed the Firm $2,325.00 for my professional consulting services.

18. Because email attachments are not stored in Time Matters, I would need to work with the Firm's IT group to determine whether the documents attached to the deleted emails exist on a backup. I estimate it would take about an hour to work with the IT Group to locate a backup of the folder where email attachments should be stored as of 5/24/2013.

19. Once we have located the deleted email attachments, we need to get them restored, and then make sure they are working with the snapshot version of Time Matters. I estimate an additional 2 to 4 hours would be required for that process.

20. In my opinion, a reasonable estimate of the cost to create a "Snapshot" of the email and documents deleted on May 24, 2013, would be between $2,000 - $4,000.

21. To restore the deleted data and merge it back into Firm's system going forward would require an additional day of work, which I estimate to cost approximately $2,000. However, it is possible that additional work will be required upon closer examination of the backups.

FURTHER, AFFIANT SAITH NOT.

_____
Thomas L. Rowe

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS ___ day of September 2013.

_____
Signature of Notary Public

LISA L. MOY
NOTARY PUBLIC PUBLIC
WAKE COUNTY, NC

My commission expires _____ 11 – 9 – _____, 20 13 .